UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| WINDSOR DENNIS | CIVIL ACTION |
| VERSUS | NO. 10-795 |
| ALLSTATE INSURANCE COMPANY | SECTION "L" (2) |

## ORDER & REASONS

Before the Court is a Motion for Partial Summary Judgment (Rec. Doc. No. 39) filed by Defendant Allstate Insurance Company. The Court has reviewed the submitted memoranda and the applicable law and is ready to rule. For the following reasons, the motion is granted.

## I. BACKGROUND AND PRESENT MOTION

This case arises out of a fire that occurred at the home of Plaintiff Windsor Dennis in New Orleans, Louisiana, on February 11, 2009.[1] At all relevant times, Plaintiff had a home insurance policy issued by Defendant Allstate Insurance Company. Shortly after the fire, Plaintiff filed a claim with Defendant. Plaintiff also gave an unsworn, recorded statement to Defendant and allowed Defendant access to the property. Thereafter, Defendant selected contractors to perform work at his home,[2] allegedly without the consent of Plaintiff. By letter dated May 29, 2009, Plaintiff's then-attorney asked Defendant to cease all work at the property. The letter asserted that Defendant was colluding with contractors to defraud Plaintiff. By that

---

[1] Except as otherwise noted, this factual background consists of uncontroverted facts as shown by the summary judgment record.

[2] The policy provides that Defendant has "the option" either to "repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time" or to "pay for all or any part of the damaged, destroyed or stolen property." Def.'s Ex. A (Rec. Doc. No. 12-4).

1

time, Defendant had paid at least $325,000 for work at Plaintiff's dwelling.[3]

Shortly after the fire occurred, both the New Orleans Fire Department (NOFD) and an investigator retained by Defendant began to investigate the fire. The NOFD found that the fire originated in multiple locations and that the cause of the ignition was intentional. The NOFD also found that the material that contributed to the spread of the fire was a substance consistent with gasoline. The Fire Department classified the incident as arson and kept the investigation open. Def.'s Ex. C (Rec. Doc. No. 12-5). The investigator retained by Defendant, Randy Bruff, made similar findings. In a report dated March 19, 2009, Mr. Bruff noted that the fire originated in nine separation locations, that the ignition source was an open flame, and that debris samples revealed evaporated gasoline. Mr. Bruff concluded that the fires were intentionally set. Def.'s Ex. B (Rec. Doc. No. 12-5).

On June 2, 2009 -- shortly after receiving the letter from Plaintiff's then-attorney asking Defendant to cease work at the property -- Defendant was contacted by the Office of the Inspector General of the United States Postal Service. Defendant was advised that Plaintiff, a medical doctor, was being investigated for heath care fraud by the federal government. Def.'s Ex. D-4 (Rec. Doc. No. 12-7). The government informed Defendant that it suspected that the fire was used as a cover to destroy the medical records relevant to the investigation. In response, Defendant reopened its investigation of the claim, stopped making payments, and requested that Plaintiff submit to an examination under oath. Plaintiff refused to do so, citing the ongoing

---

[3] Defendant has remitted a total of $468,235 to Plaintiff. *See* Def's Ex. L (Rec. Doc. No. 12-7).

criminal investigation.[4]

In February 2010, Plaintiff filed suit in state court against Defendant, alleging that Defendant mishandled his insurance claim and was liable for damages resulting from that conduct. Thereafter, Defendant removed the case to this Court and filed a Motion for Summary Judgment. In that motion, Defendant argued that Plaintiff's refusal to submit to an examination under oath foreclosed his claim of recovery. The Court heard oral arguments and denied the motion. The Court explained that under Louisiana law, an insured's refusal to submit to an examination under oath precludes recovery only if it causes prejudice to the insurer. The Court observed that whether there was prejudice in this case is a factual question that, in light of the record, is not amenable to summary judgment.

Defendant has now filed a Motion for Partial Summary Judgment, addressing Plaintiff's claim for extra-contractual relief – namely, penalties, damages, and attorney's fees and costs for Defendant's alleged failure to pay. Defendant notes that representatives of the NOFD and of the New Orleans Police Department (NOPD) have testified that the investigation into the fire remains open. Defendant observes that by statute, the time period during which an insurer must remit payment to an insured begins to run only upon "certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further

---

[4] Plaintiff was indicted for committing health care fraud in January 2010, and he pled guilty to count one of the one-count indictment in March 2010. He was sentenced in June 2010. The indictment alleged that the Office of Workers' Compensation Programs (OWCP) at the U.S. Department of Labor provides medical benefits for United States Postal Service employees; that Plaintiff billed the OWCP for providing medical services to patients for approximately one year following Hurricane Katrina when, in fact, his office was closed and he was not seeing patients; and that during that period, Plaintiff submitted claims totaling $102,053 and was paid $80,019 by the OWCP. *See* Def.'s Ex. G (Rec. Doc. No. 12-7); *see also United States v. Dennis*, No. 10-16 (E.D. La. filed 2010).

proceedings." La. Rev. Stat. Ann. § 22:1892(B)(2). Defendant asserts that Plaintiff has therefore no claim for extra-contractual relief.[5] Plaintiff opposes the motion, contending that the NOPD and NOFD investigation is only "technically" active.

## II. LAW AND ANALYSIS

### 1. Standard of Review

A district court can grant a motion for summary judgment only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the district court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986). The court must find "[a] factual dispute . . . [to be] 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party . . . [and a] fact . . . [to be] 'material' if it might affect the outcome of the suit under the governing substantive law." *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

"If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). The mere argued existence of a factual dispute will not

---

[5] Separately, Defendant argues that it cannot be found liable for acting in bad faith because Plaintiff consented to the work that Defendant performed on his property from February 2009 until May 2009 and because it was Plaintiff who decided to bar Defendant from performing further work at his home. In light of the analysis below, it is not necessary for the Court to consider this argument.

defeat an otherwise properly supported motion. *See Anderson*, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249-50 (citations omitted).

**2. Extra-Contractual Forms of Relief**

Through two statutes, Louisiana law provides that in cases where the insurer arbitrarily and capriciously fails to pay a claim within either 30 days or 60 days of receiving satisfactory proof of loss, an insured may recover various forms of extra-contractual relief, such as penalties, damages, and attorney's fees and costs. *See* La. Rev. Stat. Ann. §§ 22:1892(B)(1), 22:1973(A)-(C). To obtain such relief, the insured must show that during the relevant time period, the insurer did not have "a reasonable basis" upon which to refuse to pay. *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So.2d 1012, 1021 (La. 2003); *see also La. Bag. Co., Inc. v. Audubon Indem. Co.*, 999 So.2d 1104, 1116 (La. 2008). Section 22:1892(B)(2) further specifies that the time period within which an insurer must remit payment under Section 22:1892(B)(1) does not begin to run until there is "certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further proceedings." La. Rev. Stat. Ann. § 22:1892(B)(2).

Prior the enactment of Section 22:1892(B)(2) in 1986, *see id.* historical and statutory notes, the Louisiana Supreme Court had recognized in *Headrick v. Pennsylvania Millers Mutual Insurance Company*, 245 So.2d 324 (La. 1971), that the presence of an ongoing investigation into arson by the local authorities precludes the assessment of statutory penalties and attorney's fees against an insurer, *see id.* at 327. Notwithstanding this decision, one lower court subsequently rejected the argument that an insurer could not be found to have acted arbitrarily or

capriciously where there remained an open investigation by the fire department. *See Baghramain v. MFA Mut. Ins. Co.*, 315 So.2d 849, 853 (La. Ct. App. 3d Cir. 1975). The enactment of Section 22:1892(B)(2) may thus be viewed as representing the Legislature's decision to affirm the conclusion reached by the Louisiana Supreme Court in *Headrick* and to cast doubt on any contrary decision.[6] In particular, because the high court in *Headrick* affirmed the court of appeal's decision to reverse the trial court's award of statutory penalties and attorney's fees, *Headrick* suggests -- and the enactment of Section 22:1892(B)(2) indicates -- that a fact finder not only *may*, but in fact *must*, conclude that a failure to pay is not arbitrary or capricious if there remains an open arson investigation by the local authorities. The existence of such an investigation must be deemed to provide a reasonable basis upon which an insurer may decline to make payment to the insured.

    Section 22:1973 does not specifically have a provision like that of Section 22:1892(B)(2). But the Louisiana Supreme Court has observed that an insurer's duty to pay under Section 22:1973 and Section 22:1892 is "virtually identical." *Reed*, 857 So.2d at 1020; *accord Calogero v. Safeway Ins. Co. of La.*, 753 So.2d 170, 174 (La. 2000). Given that the insurer's duty under the two sections is thus essentially the same, there is little reason to believe that if there is an ongoing arson investigation by the local authorities, an insurer's refusal to pay, one the one hand, cannot be held arbitrary and capricious under Section 22:1892, but can, on the

---

[6] Section 22:1892(B)(2) may, in fact, be going further than *Headrick*, for in that case, the authorities had disclosed that the arson investigation was directly implicating the insured. *See Headrick*, 245 So.2d at 327. The language of Section 22:1892(B)(2) does not require such a link. Instead, it authorizes insurers to decline to pay whenever there is an open arson investigation. This reflects the Legislature's view that the presence of such an investigation is in and of itself enough to "justify caution and delay on the part of the insurer." *Headrick*, 245 So.2d at 327.

other hand, be held arbitrary and capricious under Section 22:1973. Such a conclusion would be difficult to reconcile with the longstanding "presum[tion] that it is the intention of the legislative branch to achieve a consistent body of law," *Stogner v. Stogner*, 739 So.2d 762, 766 (La. 1999), and that accordingly, "where two statutes deal with the same subject matter, they should be harmonized if possible." *LeBreton v. Rabito*, 714 So.2d 1226, 1229 (La. 1998).[7]

In this case, the uncontroverted deposition testimony of Captain Harry Mendoza of the NOPD and Investigator Wayne Regis of the NOFD indicate that both departments have maintained an open investigation into the fire that damaged Plaintiff's home. *See* Def.'s Ex. A (Rec. Doc. No. 39-5); Def.'s Ex. B (Rec. Doc. No. 39-6). Neither the NOPD nor the NOFD has indicated that "there is insufficient evidence [of arson] to warrant further proceedings." La. Rev. Stat. Ann. § 22:1892(B)(2). In his opposition, Plaintiff argues that the investigation by the authorities are only "technically" active and that they are essentially "at a standstill." Pl.'s Opp. Mem. at 2 (Rec. Doc. No. 45). Even if one were to assume that this is true,[8] the pace at which the

---

[7] The mere fact that Section 22:1973 does not have the same language as that of Section 22:1892 is of no moment. In *Calogero*, the Louisiana Supreme Court determined that even if an insured shows that the insurer breached its duty to pay under both Section 22:1892 and Section 22:1973, he may recover only the greater penalty provided under Section 22:1973, and not the penalty provided under Section 22:1892. *Calogero*, 753 So.2d at 174. This decision can fairly be said to be in tension with the express provision of Section 22:1892. Indeed, that section states that a penalty "shall" be assessed for an arbitrary and capricious failure to pay within 30 days. La. Rev. Stat. Ann. § 22:1892(B)(1). The conclusion of the Louisiana Supreme Court that a penalty under Section 22:1973, if awarded, supersedes that which is available under Section 22:1892 underscores the court's understanding that the duty to pay under these two sections is essentially the same.

[8] Plaintiff does not cite to any specific portion of the deposition testimony to support this factual assertion, but a review of the record indicates that Plaintiff may be relying on Investigator Regis's statement that he does "as much as [he] can when [he] can." Def.'s Ex. B (Rec. Doc. No. 39-6).

NOPD and the NOFD may be investigating the matter is irrelevant. As noted above, the key here is whether there has been a "certification of the investigating authority that there is no evidence of arson or that there is insufficient evidence to warrant further proceedings." La. Rev. Stat. Ann. § 22:1892(B)(2). In other words, what matters is not how fast or how intensely the local authorities may be investigating the matter, but whether, in the view of the local authorities, there is sufficient evidence of arson to maintain an open investigation.

As noted above, both the NOPD and the NOFD have kept open their investigation into the fire at Plaintiff's home. This clearly reflects the conclusion of the two departments that there is sufficient evidence of arson to warrant further proceedings, and this precludes a finding that any failure by Defendant to pay Plaintiff thus far has been arbitrary and capricious. *See also B. Bennett Mfg. Co., Inc. v. S.C. Ins. Co.*, 692 So.2d 1258, 1271 (La. Ct. App. 5th Cir. 1997) (noting that an insurer is "justified in withholding payment while the matter [is] under official investigation" and that the insurer is required to pay a claim only upon receiving notification from the authorities that "their files are closed"). Under these circumstances, Defendant's motion for partial summary judgment as to Plaintiff's claim for extra-contractual relief must be granted.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant's Motion for Partial Summary Judgment is hereby **GRANTED** and that Plaintiff's claim for extra-contractual relief is hereby **DISMISSED** with prejudice.

New Orleans, Louisiana, this 9th day of March, 2011.

_____
UNITED STATES DISTRICT JUDGE