UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **WINDSOR DENNIS** | **CIVIL ACTION** |
| **VERSUS** | **NO. 10-795** |
| **ALLSTATE INSURANCE COMPANY** | **SECTION "L" (2)** |

**ORDER & REASONS**

Before the Court are two Motions filed by Defendant Allstate Insurance Company: a Motion to Divide the Trial into Two Phases (R. Doc. 148); and a Motion in Limine to Exclude Testimony and Estimates (R. Doc. 149). The Court heard oral arguments from counsel at a hearing on December 4, 2012. The Court has reviewed the submitted memoranda and the applicable law and now issues this Order and Reasons.

**I. BACKGROUND**

This case arises out of a fire that occurred at the home of Plaintiff Windsor Dennis in New Orleans, Louisiana, on February 11, 2009.[1] At all relevant times, Dennis had a home insurance policy issued by Defendant Allstate Insurance Company. Shortly after the fire, Dennis filed a claim with Allstate. Dennis also gave an unsworn, recorded statement to Allstate and allowed Allstate access to the property. Thereafter, Allstate selected contractors to perform work at his home,[2] allegedly without the consent of Dennis. By letter dated May 29, 2009,

---

[1] Except as otherwise noted, this factual background consists of uncontroverted facts as shown by the record developed in previous motion practice, including motions for summary judgment. *See, e.g.*, (R. Doc. 56).

[2] The policy provides that Allstate has "the option" either to "repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time" or to "pay for all or any part of the damaged, destroyed or stolen

1

Dennis's then-attorney asked Allstate to cease all work at the property. The letter asserted that Allstate was colluding with contractors to defraud Dennis. By that time, Allstate had paid at least $325,000 for work at Dennis's dwelling.[3]

Shortly after the fire occurred, both the New Orleans Fire Department (NOFD) and an investigator retained by Allstate began to investigate the fire. The NOFD found that the fire originated in multiple locations and that the cause of the ignition was intentional. The NOFD also found that the material that contributed to the spread of the fire was a substance that left evidence consistent with gasoline. The Fire Department classified the incident as arson and kept the investigation open. Def.'s Ex. C (R. Doc. 12-5). The investigator retained by Allstate, Randy Bruff, made similar findings. In a report dated March 19, 2009, Bruff noted that the fire originated in nine separation locations, that the ignition source was an open flame, and that debris samples revealed evaporated gasoline. Bruff concluded that the fires were intentionally set. Def.'s Ex. B (R. Doc. 12-5).

On June 2, 2009, shortly after Allstate received the letter from Dennis's then-attorney asking Allstate to cease work at the property, the Office of the Inspector General of the United States Postal Service contacted Allstate. The OIG representative advised Allstate that the federal government was investigating Dennis, a medical doctor, for heath care fraud. Def.'s Ex. D-4 (R. Doc. 12-7). The government informed Allstate that it suspected that the fire was used as a cover to destroy the medical records relevant to the investigation. In response, Allstate reopened its investigation of the claim, stopped making payments, and requested that Dennis submit to an

---

property." Def.'s Ex. A (R. Doc. 12-4).

[3] Allstate has remitted a total of $468,235 to Dennis. *See* Def's Ex. L (R. Doc. 12-7).

examination under oath.  Dennis refused to do so, citing the ongoing criminal investigation.[4]

In February 2010, Dennis filed suit in state court against Allstate, alleging that Allstate mishandled his insurance claim and was liable for damages resulting from that conduct. Thereafter, Allstate removed the case to this Court and filed a Motion for Summary Judgment. In that motion, Allstate argued that Dennis's refusal to submit to an examination under oath foreclosed his claim of recovery.  The Court heard oral arguments and denied the motion.  The Court explained that under Louisiana law, an insured's refusal to submit to an examination under oath precludes recovery only if it causes prejudice to the insurer.  The Court observed that whether there was prejudice in this case is a factual question that, in light of the record, is not amenable to summary judgment.

Allstate then filed a Motion for Partial Summary Judgment, addressing Dennis's claim for extra-contractual relief, namely penalties, damages, and attorney's fees and costs for Allstate's alleged failure to pay.  The Court granted the Motion on March 10, 2011, noting that ongoing investigations by the New Orleans Police and Fire Departments precluded a finding that Allstate's failure to pay Dennis had been arbitrary and capricious.

The Court granted a continuance of the trial date after being advised that settlement negotiations were in progress.  The jury trial in this matter is now scheduled to begin on January

---

[4] Dennis was indicted for committing health care fraud in January 2010, and he pled guilty to count one of the one-count indictment in March 2010.  He was sentenced in June 2010. The indictment alleged that the Office of Workers' Compensation Programs (OWCP) at the U.S. Department of Labor provides medical benefits for United States Postal Service employees; that Dennis billed the OWCP for providing medical services to patients for approximately one year following Hurricane Katrina when, in fact, his office was closed and he was not seeing patients; and that during that period, Dennis submitted claims totaling $102,053 and was paid $80,019 by the OWCP.  *See* Def.'s Ex. G (R. Doc. 12-7); *see also United States v. Dennis*, No. 10-16 (E.D. La. 2010).

7, 2013 at 8:30 a.m.

## II.  PRESENT MOTIONS

### A. Defendant's Motion to Exclude Testimony and Estimates

On November 2, 2012, Allstate filed a Motion seeking to exclude testimony and documents relating to estimates of damages to Dennis's home.  (R. Doc. 149).  Allstate argues that the proffered estimates of the cost to repair the home could only be properly admitted as expert opinion and, because Dennis did not comply with the Court's scheduling order with regard to disclosure of expert reports or otherwise qualify these witnesses as experts, the testimony should be excluded.  Allstate further argues that Dennis's plan to introduce testimony and documents relating to the potential repair costs represents an inappropriate attempt to introduce expert testimony in the guise of lay fact testimony.  Allstate points to precedent indicating that contractors who create estimates for home repairs do so by employing specialized knowledge, and that contractor testimony cannot be properly admitted at trial when the contractor has not submitted an expert report.

Dennis opposes Allstate's Motion.  (R. Doc. 155).  Dennis argues that at least some of the documents and testimony at issue relate to repairs that have already been completed.  Dennis argues that the listed witnesses are therefore fact witnesses who will testify as to the fact of monies spent rather than as to an opinion.

### B.  Law and Analysis

A lay witness may offer opinion testimony, so long as the opinion is "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  Fed. R. Evid. 701(c).  In adopting the 2000 amendment, the Advisory Committee stated that the

amendment incorporates the following distinction between lay and expert testimony: "lay testimony 'results from a process of reasoning familiar in everyday life,' while expert testimony 'results from a process of reasoning which can be mastered only by specialists in the field.'" Notes of Advisory Committee on 2000 amendments (*quoting State v. Brown*, 836 S.W.2d 530, 549 (Tenn. 1992)). Numerous courts, including the United States Court of Appeals for the Fifth Circuit, have noted and explicitly adopted this distinction. *Pendarvis v. Am. Bankers Ins. Co. of Florida*, 354 F. App'x 866, 868-69 (5th Cir. 2009); *U.S. v. Caldwell*, 586 F.3d 338, 347-48 (5th Cir. 2009); *U.S. v. Sosa*, 513 F.3d 194, 200 (5th Cir. 2008); *see also U.S. v. White*, 492 F.3d 380, 403 (6th Cir. 2007); *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1124 (10th Cir. 2005); *U.S. v. Garcia*, 413 F.3d 201, 215-16 (2d Cir. 2005).

In *Pendarvis*, the Fifth Circuit found that a contractor's estimate to repair a mobile home damaged by Hurricane Katrina required his knowledge and skill as a specialist in the field of building construction and repairs because the estimate "required, at a minimum, [that he] forecast the amount, type, and costs of materials needed, as well as the amount of labor required to complete the long list of repairs. These forecasts are not common knowledge, 'familiar in everyday life.'" 354 F. App'x at 869. The *Pendarvis* Court further distinguished the contractor's testimony from "lay testimony regarding repair costs for repairs already performed." *Id.* at 869, n.3 (distinguishing *Tampa Bay Shipbuilding & Repair Co. v. Cedar Shipping Co.*, 320 F.3d 1213, 1221-23 (11th Cir. 2003)) ("In *Tampa Bay*, the Eleventh Circuit allowed employees to submit lay testimony regarding repair costs for repairs already performed. In that scenario, the testimony required the employees to do little more than read an invoice. Reading an invoice does not require 'scientific, technical, or other specialized knowledge.'").

Here, Allstate seeks to exclude testimony relating to estimates of damages and any estimates of damages that were not accompanied by an expert report. Dennis's opposition seeks to draw the Court's attention to other evidence, namely evidence of repairs already performed. Because Allstate seeks to exclude only estimates of future repairs, Allstate's Motion is supported by precedent and must be granted. The Motion does not seek to exclude, and the Court will not exclude, evidence of already completed repairs, which may consist of testimony, invoices, canceled checks, and other similar evidence.

### C. Defendant's Motion to Divide Trial into Two Distinct Phases

On November 2, 2012, Defendant filed a Motion seeking to divide the trial in this matter into two distinct phases, liability and damages, before the same Jury. (R. Doc. 148). Allstate argues that the evidence and issues involved in proof of its affirmative defense, arson, are sufficiently complex that trying the damages phase at the same time risks significant jury confusion. Allstate further argues that a jury could view its damages defense as "bickering over the amount of damages when liability has never been established." *Id.* Allstate suggests that, in the event the jury returns a verdict in its favor on liability, the trial could be significantly shortened.

Dennis opposes Allstate's Motion. (R. Doc. 156). Dennis argues that the issues of damages and liability are related in the sense that the jury must consider why Dennis would have burned down his house when the insurance proceeds would only have compensated him to the extent of replacement costs rather than providing a net financial benefit.

### D. Law and Analysis

Federal Rule of Civil Procedure 42(b) provides as follows: "For convenience, to avoid

prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims. When ordering a separate trial, the court must preserve any federal right to a jury trial." Fed. R. Civ. P. 42(b). "A motion to bifurcate is a matter within the sole discretion of the trial court, and the appellate court will not reverse the trial court's decision absent an abuse of that discretion." *First Texas Sav. Assoc. v. Reliance Ins. Co.*, 950 F.2d 1171, 1174 n.2 (5th Cir. 1992), *citing Gonzalez-Marin v. Equitable Life Assur. Soc.*, 845 F.2d 1140, 1145 (1st Cir. 1992).

The Fifth Circuit has recognized an important limitation on ordering a separate trial of issues under Rule 42(b): "[T]he issue to be tried must be so distinct and separate from the others that a trial of it alone may be had without injustice." *Swofford v. B. & W., Inc.*, 336 F.2d 406, 415 (5th Cir. 1964), *cert. denied*, 379 U.S. 962, (1965). Moreover, "even if bifurcation might somehow promote judicial economy, courts should not order separate trials when bifurcation would result in unnecessary delay, additional expense, or some other form of prejudice." *Laitram Corp. v. Hewlett-Packard Co.*, 791 F. Supp. 113, 115 (E.D. La.1992) (Feldman, J.), *quoting Willemijn Houdstermaatschaapij BV v. Apollo Computer, Inc.*, 707 F. Supp. 1429, 1433 (D. Del. 1989); *see also Interstate Restoration Group, Inc. v. Al Copeland Investments*, Civ. A. 07-0970, 2009 WL 1870787 (E.D. La. June 25, 2009) (Duval, J.). "Prejudice is the Court's most important consideration in deciding whether to order separate trials under Rule 42(b)." *Laitram Corp.*, 791 F. Supp. at 115.

Here, Allstate is careful to style its Motion as one to divide the trial into phases rather than to bifurcate the trial. There are no Seventh Amendment concerns. However, the Court finds that a division of the trial in this matter into phases is not likely to make efficient use of

7

judicial resources.  The Court also has considered the potential prejudice to Dennis.  The Court will thus refrain from exercising its discretion to divide the trial into phases.

### III. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Allstate's Motion to Divide the Trial into Two Phases (R. Doc. 148) be and is hereby **DENIED**.  **IT IS FURTHER ORDERED** that Allstate's Motion in Limine to Exclude Testimony and Estimates (R. Doc. 149) be and is hereby **GRANTED**.

New Orleans, Louisiana, this 5th day of December, 2012.

_____
UNITED STATES DISTRICT JUDGE